```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                        CHARLESTON
```

**JAMES E. MILLER,**

    **Plaintiff,**

**v.**                                    **CASE NO. 2:10-cv-01028**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**

## <u>M E M O R A N D U M   O P I N I O N</u>

This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for Supplemental Security Income ("SSI"), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Both parties have consented in writing to a decision by the United States Magistrate Judge.

Plaintiff, James Edward Miller (hereinafter referred to as "Claimant"), filed an application for SSI on August 24, 2006, alleging disability as of March 1, 2005, due to chronic neck and back pain, bipolar disorder, manic depression, substance abuse, alcoholism, gout and breathing problems. (Tr. at 80-82, 86.) The claim was denied initially and upon reconsideration. (Tr. at 54-58, 60-62.) Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 67.) The hearing was held on August 1, 2008, before the Honorable Charlie Paul Andrus. (Tr. at 18-38.) By decision dated October 23, 2008, the ALJ determined that

Claimant was not entitled to benefits. (Tr. at 10-17.) On July 27, 2010, the Appeals Council considered additional evidence offered by the Claimant, but determined it did not provide a basis for changing the ALJ's decision. (Tr. at 1-6.) On August 18, 2010, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 416.920 (2008). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to

Subpart P of the Administrative Regulations No. 4. Id. § 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.920(f) (2008) The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 12.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of COPD, degenerative disc disease of the cervical and lumbar spine, and a bipolar disorder, not

3

otherwise specified.  (Tr. at 12.)  At the third inquiry, the ALJ concluded that Claimant's impairments doe not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 12.)  The ALJ then found that Claimant has a residual functional capacity for medium work, reduced by nonexertional limitations. (Tr. at 13-14.) As a result, Claimant cannot return to his past relevant work. (Tr. at 16.)  Nevertheless, the ALJ concluded that Claimant could perform jobs such as price marker, inspecter, assembler, routine clerk, grader/sorter and assembler, which exist in significant numbers in the national economy.  (Tr. at 17.)  On this basis, benefits were denied.  (Tr. at 17.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.  Hays v.Sullivan, 907 F.2d

1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was fifty-one years old at the time of the administrative hearing. (Tr. at 22.) Claimant graduated from high school. (Tr. at 23.) In the past, he worked as a janitor and as a farm laborer. (Tr. at 23, 33.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

On March 1, 2006, Kevin White, M.A. of Prestera Mental Health examined Claimant. He diagnosed Claimant with bipolar disorder and found only a mild impact on Claimant's daily functioning. Claimant was stable with medication. (Tr. at 163-64.) On June 8, 2006, Mr. White examined Claimant and found that Claimant has a long substance abuse history. Claimant was mildly depressed and anxious. His insight and judgment were poor. Mr. White diagnosed generalized anxiety disorder, depressive disorder, not otherwise specified, alcohol dependence, early full remission, benzodiazepine

dependence, early full remission, cannabis dependence, early partial remission, rule out personality disorder. He rated Claimant's GAF at 60.[1] (Tr. at 166.)

On November 17, 2006, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform medium work. (Tr. at 170-77.)

On November 17, 2006, a State agency medical source completed a Psychiatric Review Technique form and opined that Claimant's mental impairments were not severe. (Tr. at 178-91.)

On March 12, 2007, Roger C. Baisas, M.D. conducted a consultative examination. Dr. Baisas diagnosed low back pain syndrome, cervicalgia, bipolar affective disorder, alcoholism in remission and gout. (Tr. at 199.)

On March 18, 2007, Lisa C. Tate, M.A. examined Claimant at the request of the State disability determination service. Claimant admitted a history of alcohol and drug abuse. (Tr. at 205.) Claimant reported post traumatic stress disorder after being in an altercation with his father after his father tried to break into his mother's home. Claimant reportedly shot his father and beat him to death with a gun. (Tr. at 205-06.) Claimant reported a treatment history at Prestera Mental Health for more than 20 years,

---

[1] A GAF rating between 51 and 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers). American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. (Text Revision) 2000).

6

and recently began treatment at Lincoln County Primary Care. (Tr. at 206.) Claimant reported being arrested twice for DUI and once for public intoxication. He spent 90 days in jail for involuntary manslaughter and one year on home confinement. (Tr. at 207.)

On examination, Claimant's mood was depressed and his affect restricted. His judgment was within normal limits. His immediate, recent and remote memory were within normal limits. (Tr. at 207.) His concentration was mildly deficient. (Tr. at 207.) Ms. Tate diagnosed bipolar disorder, not otherwise specified with features of posttraumatic stress disorder, alcohol dependence in sustained remission and cannabis abuse in sustained remission. (Tr. at 208.)

On March 21, 2007, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform medium work with some occasional postural limitations and a need to avoid concentrated exposure to vibration, fumes, odors, dusts, gases and poor ventilation and hazards. (Tr. at 212-19.)

On March 24, 2007, a State agency medical source completed a Psychiatric Review Technique form and opined that Claimant's mental impairments were not severe. (Tr. at 220-33.)

The record includes treatment notes from Dr. Walker dated January 25, 2006 and May 24, 2006. On January 25, 2006, Claimant complained of feeling fatigued and tired. Dr. Walker diagnosed fatigue and arthralgias of unknown etiology, history of alcoholism,

gun shot wound to the thorax with no sequella at this time, degenerative changes of the cervical spine and question of bipolar illness. (Tr. at 238.)

On May 24, 2006, Claimant returned to Dr. Walker following an alcoholism relapse. Claimant ended up on the street, but was back home again with his mother. Claimant was taking an antidepressant and a sleep aid. He was somewhat subdued and not anxious. He was sleeping reasonably well. Claimant also had neck pain from degenerative disc disease. Dr. Walker diagnosed history of alcohol abuse in remission at this time, generalized anxiety disorder, history of depression with insomnia and chronic benzodiazepine use. (Tr. at 236.)

By letter dated June 7, 2007, Mary Aldred-Crouch of Lincoln Primary Care Center, Inc. wrote that Claimant had asked her and Robert Walker, M.D. to provide a letter detailing Claimant's medical and mental health issues that impact his ability to function in a work setting. Ms. Aldred-Crouch wrote that their records for Claimant date back to 1993, and Dr. Walker's notes consistently describe the following medical problems: chronic alcoholism (currently in remission), degenerative joint disease of the cervical and lumbar spine with evidence of radiculopathy and a history of bipolar disorder. (Tr. at 234.) In addition, Ms. Aldred-Crouch wrote that her work with Claimant had revealed post traumatic stress disorder as well as generalized anxiety disorder.

She rated Claimant's GAF at 40 to 45[2]. Ms. Aldred-Crouch opined that Claimant "is and has been unable to function in a work setting. Given the chronic, progressive nature of his health issues, neither Dr. Walker nor I see his inability to work or earn a living amenable to change." (Tr. at 234.)

On August 29, 2007, a physician completed a West Virginia Department of Health and Human Resources Disability/Incapacity Evaluation and opined that Claimant was disabled for SSI-related medicaid and work incentive. (Tr. at 242-43.)

The record includes additional treatment notes from Dr. Walker and Ms. Aldred-Crouch dated June 23, 2007, through March 26, 2008. (Tr. at 249-64.) On July 25, 2007, Claimant's alcoholism was in remission. Claimant also had bipolar disorder and posttraumatic neck pain, which responded well to Neurontin and Trazodone. Claimant reported doing odd jobs and maintenance on his mother's farm. Dr. Walker noted that Claimant was a binge drinker who often ends up in trouble when this happens. Dr. Walker diagnosed alcoholism, binge drinking in remission, possible bipolar disorder, in counseling and on two drug therapy, chronic pain syndrome and degenerative disease of the cervical spine, posttraumatic. (Tr. at 258.)

---

[2] A GAF of 41-50 is defined as "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. (Text Revision) 1994).

On August 23, 2007, Gregory A. Elkins, M.D. completed a General Physical Adults form for West Virginia Department of Health and Human Resources which is difficult to read, but presumably states that Claimant is disabled. (Tr. at 255-56.)

On October 10, 2007, Claimant was "functioning well on his current medication which covers him for generalized anxiety and pain but does not allow excess medication since it is supplied by his mother." (Tr. at 254.) Dr. Walker diagnosed alcoholism with binge alcohol behavior in counseling, degenerative disease of the spine in weight bearing joints, especially cervical spine with chronic pain syndrome, stable, question of bipolar illness with no recent manic or severe depressive episodes. (Tr. at 254.)

On January 9, 2008, Dr. Walker diagnosed depressive disorder, not otherwise specified, anxiety disorder, not otherwise specified and COPD. (Tr. at 252.) On January 22, 2008, Claimant reported use of Advair with some improvement. Dr. Walker diagnosed COPD. (Tr. at 250.) On March 26, 2008, Dr. Walker strongly advised that Claimant stop smoking. (Tr. at 249.)

On July 17, 2008, Ms. Aldred-Crouch wrote that Dr. Walker was very concerned about Claimant's pulmonary function. Dr. Walker and Ms. Aldred-Crouch completed a Medical Assessment of Ability to do Work-Related Activities (Mental) on which they opined that Claimant's abilities were poor to none in all categories. (Tr. at 266-68.) By letter dated June 11, 2008, which letter was

referenced in the Assessment, these sources wrote that Claimant has a "myriad of chronic conditions that make it infeasible for him to work now or in the future." (Tr. at 269.) They wrote that Claimant suffers from "paralyzing Generalized Anxiety Disorder as well as Post Traumatic Stress Disorder" and bipolar disorder. (Tr. at 269.) "Presently, Mr. Miller's mental health issues are somewhat stable with medication, however increased stress causes him to destabilize." (Tr. at 269.) Claimant also has degenerative joint disease of the cervical and lumbar spine with evidence of radiculopathy, COPD and alcohol dependence in remission since 2000. "While the Alcohol Dependence is not a factor in Mr. Miller's disability, the Joint Disease and COPD are chronic, progressive illnesses that will increasingly make it impossible for him to function well in any setting. The combination of Mr. Miller's health and mental health issues lead us to conclude Mr. Miller is, without reservation, unable to function in a work setting." (Tr. at 269.)

Following the ALJ's decision, on November 26, 2008, Ms. Aldred-Crouch and Dr. Walker wrote a letter in response to the ALJ's denial of benefits. This letter was submitted by Claimant to the Appeals Council. These sources wrote that while Ms. Tate opined that Claimant had a GAF of 60, Claimant rarely functions that well, and typically functions at a GAF of 50 to 45. Dr. Walker felt that Claimant's most threatening problem was his COPD

and that he would soon require oxygen to walk any distance. (Tr. at 274.) Both sources opined that Claimant's impairments in combination lead them to conclude that Claimant is unable to function in a work setting. (Tr. at 275.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) Claimant's physical and mental impairments in combination equal a listed impairment; (2) the ALJ failed to afford proper weight to the opinion of Claimant's treating sources; (3) the ALJ erred in failing to adopt the testimony of the vocational expert that Claimant could not work with certain limitations opined by Claimant's treating healthcare providers; and (4) new evidence offered to the Appeals Council from Claimant's treating sources provided a basis for changing the ALJ's decision. (Pl.'s Br. at 3-10.)

The Commissioner argues that (1) substantial evidence supports the ALJ's finding that the opinions of Claimant's treating sources were not entitled to much weight; (2) substantial evidence supports the ALJ's finding that Claimant's subjective complaints were not entirely credible; and (3) substantial evidence supports the ALJ's finding that Claimant's impairments did not meet or equal the criteria of any of the listed impairments. (Def.'s Br. at 12-20.)

Claimant first argues that his physical and mental impairments in combination equal a listed impairment. Claimant does not cite

to the listing which he believes he equals or the specific evidence supporting this argument, and the court finds this argument unconvincing. Substantial evidence supports the ALJ's finding that Claimant's impairments do not meet or equal a listed impairment.

Claimant next argues that the ALJ erred in failing to afford proper weight to the opinion of Claimant's treating sources, Dr. Walker and Ms. Aldred-Crouch. When limitations opined by these sources were considered by the vocational expert, he could identify no jobs. Claimant argues that if the ALJ had any question, he should have contacted these sources for clarification. Claimant further argues that the new evidence offered by Claimant to the Appeals Council from these treating sources provides a basis for changing the ALJ's decision. (Pl.'s Br. at 5-9.)

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 416.927(d)(2) (2008). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. § 416.927(d)(2) (2008). The opinion of a treating physician must be

13

weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. § 416.927(d)(2) (2008). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1994). If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6). These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. § 416.927(d)(2).

  In his decision, the ALJ found that Claimant had severe impairments of chronic pulmonary disease, degenerative joint disease of the cervical and lumbar spine and a bipolar disorder. (Tr. at 12.)

The ALJ found that

> [o]n June 7, 2007, August 23, 2007, September 24, 2007, June 11, 2008, and July 17, 2008, the claimant's counselor and physicians have opined the claimant is disabled due primarily to his mental impairments (Exhibits C-13F, C-14F, C-20F, and C-21F). The basis given for the claimant's disability is a combination of his physical limitations, including pain and breathing difficulties, as well as his mental health issues. The opinions of disability and limitation are reportedly based upon observation of the claimant's condition over many years of treatment (Id). These opinions are not, however, consistent with the treatment record. The treatment records show normal physical examination findings with no findings of abnormal mental status recorded. The last mental health evaluation of record from a treating source on June 8, 2006 shows the claimant's GAF was assessed at 60 (Exhibits C-1F, C-7F, and C-20F), and no objective findings have been reported supporting such a severe decrease in mental function since the last full mental status evaluation was conducted by treating sources. In fact, the treatment notes since that evaluation show the claimant has responded well to the medication and the records from the claimant's actual office visits show his condition is stable (Exhibit C-20F). As the treatment record and objective findings fail to support the opinions and assessments provided by the treating physicians and counselors, the undersigned has given the same little weight in determining the claimant's residual functional capacity.

(Tr. at 15-16.)

The ALJ ultimately determined that Claimant's residual functional capacity was limited to medium work, with an ability to stand and walk for six hours in a workday, sit for six hours in a workday, occasionally climb, balance, stoop, kneel, crouch, or crawl; no vibration, excessive dust or fumes, heights or dangerous machinery; an ability to alternate between sitting and standing at thirty minute to one hour intervals; and an ability to perform only

15

simply routine work without significant public contact. (Tr. at 14.)

The court finds that the ALJ adequately weighed the medical evidence of record, including that from treating sources, and his findings are in keeping with applicable case law and regulations and are supported by substantial evidence. The ALJ provides an adequate explanation for his decision to afford little weight to the opinions of Ms. Aldred-Crouch and Dr. Walker. The ALJ correctly reasons that these opinions expressed in the letters referenced above and on the Assessment simply are not supported by or consistent with the treatment record. Indeed, there is little objective evidence in the treatment records from these sources related to Claimant's mental condition. The ALJ correctly observed that the treatment notes instead indicate Claimant responded well to medication and that his condition was stable. Treatment notes indicate that when Claimant's alcoholism was in remission, he responded well to medication and was able to do odd jobs on his mother's farm. (Tr. at 258.) On October 10, 2007, Dr. Walker observed that Claimant was "functioning well" on his current medication. (Tr. at 254.)

The ALJ references the mental status examination completed by Mr. White of Prestera, where Claimant received extensive ongoing treatment before switching to Dr. Walker. On June 8, 2006, Mr. White rated Claimant's GAF at 60, and explains that there are no

objective findings reported since then supporting such a severe decrease in mental functioning. Instead, as noted above, the treatment notes indicate Claimant responded to medication and that his condition was stable.

The court further finds that the ALJ was under no obligation to contact Ms. Aldred-Crouch or Dr. Walker about their opinions. The regulations related to recontacting medical sources state that such is required only when the information is "inadequate for us to determine whether you are disabled" 20 C.F.R. § 416.912(e) (2008). The evidence from these sources was not inadequate, it simply does not support the opinions of these sources that Claimant is disabled.

Finally, the court has considered the new evidence offered to the Appeals Council and finds it does not provide a basis for changing the ALJ's decision.

In *Wilkins v. Secretary*, 953 F.2d 93 (4th Cir. 1991), the Appeals Council incorporated into the administrative record a letter submitted with the request for review in which Wilkins' treating physician offered his opinion concerning the onset date of her depression. *Id.* at 96. The *Wilkins* court decided it was required to consider the physician's letter in determining whether substantial evidence supported the ALJ's findings. *Id.* The Fourth Circuit stated:

> "Reviewing courts are restricted to the administrative record in performing their limited function of

17

> determining whether the Secretary's decision is supported by substantial evidence." *Huckabee v. Richardson*, 468 F.2d 1380, 1381 (4th Cir. 1972); *see* 42 U.S.C.A. § 405(g). The Appeals Council specifically incorporated Dr. Liu's letter of June 16, 1988 into the administrative record. Thus, we must review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings.

Id. Under Wilkins, the court must review the record as a whole, including the new evidence submitted to the Appeals Council, in order to determine whether the ALJ's decision is supported by substantial evidence.

The letter submitted to the Appeals Council from Ms. Aldred-Crouch and Dr. Walker takes issues with the ALJ's purported reliance on Ms. Tate's opinion and her estimate of Claimant's GAF of 60. In fact, the ALJ does not mention Ms. Tate's opinion in explaining the weight afforded the opinions of Ms. Aldred-Crouch and Dr. Walker and, it was Mr. White from Prestera, who opined that Claimant had a GAF of 60. As noted above, there is no objective evidence from these treating sources to indicate a significant deterioration in Claimant's mental condition after he received treatment from Mr. White.

These sources state in their letter that Claimant's health is "*somewhat stable* with medication, however increased stress causes him to destabilize as it did earlier this month." (Tr. at 275.) These sources do not provide the underlying treatment notes to which they refer, but in any event, the ALJ's residual functional capacity limited him to jobs requiring simple, routine work without

significant public contact. (Tr. at 14.)

Finally, these sources state that Claimant's obstructive and restrictive lung disease is "most threatening" to Claimant. (Tr. at 274.) This evidence is not new, and had already been provided to the ALJ. (Tr. at 265.) Likewise, these sources continue to assert that Claimant's impairments, in combination, should result in a finding of disability. This also is not a new assertion, nor does Claimant offer new evidence in this regard.

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, the final decision of the Commissioner is AFFIRMED and this matter is DISMISSED from the docket of this court.

The Clerk of this court is directed to transmit copies of this Order to all counsel of record.

ENTER: June 21, 2011

_____
Mary E. Stanley
United States Magistrate Judge